# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 10-10452
Summary Calendar

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 30, 2011

Lyle W. Cayce
Clerk

STEPHEN C. WALKER, also known as Stephen Clayton Walker,

    Plaintiff-Appellant,

versus

JOE S. NUNN, Warden, Individual and Official Capacity;
BRUCE ZELLERS, Region 5 Director,
Texas Department of Criminal Justice, Institutional Division, Official Capacity;
GLEN H. WHITFIELD, Associate Warden, Individual and Official Capacity;
SHAWN WATSON; KENNETH BURKETTE,

    Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas
No. 2:08-CV-84

Before REAVLEY, SMITH, and PRADO, Circuit Judges.

PER CURIAM:*

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Stephen Walker, Texas prisoner # 1417300, filed this 42 U.S.C. § 1983 suit, alleging that he had been subjected to cruel and unusual punishment in violation of the Eighth Amendment because individuals employed by or associated with the Texas prison system deprived him of adequate sleep during his incarceration at the Rufe Jordan Unit of the Texas Department of Criminal Justice ("TDCJ"). Walker named as defendants Joe Nunn, the warden of the unit, in his individual and official capacity; Nathaniel Quarterman, the Director of the TDCJ Correctional Institutions Division, in his official capacity; Bruce Zeller, a regional director at the TDCJ, in his official capacity; Glen Whitfield, an assistant warden of the unit, in his individual and official capacities; Floyd Baxter, a health administrator at the unit, in his individual and official capacities; Norvel Arnold, a major of corrections at the unit, in his individual and official capacities; Shawn Watson, a safety and risk management officer for the unit, in his official capacity; Kenneth Burkette, a factory assistant manager at the unit, in his official capacity; and Joyce Vanderburg, a lieutenant of corrections at the unit, in her individual and official capacities.

Following an evidentiary hearing, the district court granted summary judgment against Walker and dismissed his suit with prejudice. We review a summary judgment *de novo*, applying the same standards as did the district court. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party must demonstrate the absence of a genuine issue of material fact, but it does not need to negate the elements of the nonmovant's case. *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir.), *cert. denied*, 131 S. Ct. 355 (2010). If the moving party meets this initial burden, the burden shifts to the nonmovant to set forth specific evidence to support his claims. *Id.* The nonmovant's burden is not satisfied through a mere showing of "some metaphysical doubt as to the material facts" or by "conclusory allega-

tions," "unsubstantiated assertions," or "only a scintilla of evidence." *Id.* (internal quotation marks and citation omitted). All facts and inferences are construed in the light most favorable to the nonmoving party. *Dillon*, 596 F.3d at 266.

To establish an Eighth Amendment violation based on the conditions of his confinement, a prisoner must satisfy both an objective and a subjective component. *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995). "First, he must show that his confinement resulted in a deprivation that was 'objectively, sufficiently serious.'" *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To make such a showing, the prisoner must demonstrate that the deprivation violated contemporary standards of decency and resulted in the denial of "the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal quotation marks and citation omitted); *see Helling v. McKinney*, 509 U.S. 25, 36 (1993). "[S]leep undoubtedly counts as one of life's basic needs." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999).

Second, regarding the subjective component, the prisoner must show that prison officials possessed a sufficiently culpable state of mind in that they were deliberately indifferent to the alleged conditions. *Wilson*, 501 U.S. at 297-303; *Woods*, 51 F.3d at 581. To establish deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. That is, the prisoner must show both that (1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and (2) the official drew the inference. *Id.* "Deliberate indifference is an extremely high standard to meet." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (internal quotation marks and citation omitted).

"In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded rea-

3

sonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. "[P]rison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id.* at 845. "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

In addition to the claims he brought against the defendants in their individual capacities, Walker sought declaratory and injunctive relief against a number of the defendants in their official capacities. Such relief was available for his official-capacity claims if Walker were able to satisfy the objective and subjective showings required to establish an Eighth Amendment violation. *See id.* at 846; *Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 605 (5th Cir. 2008).

Walker's claim of inadequate sleep was based on three conditions of his confinement: the prison schedule, noise in the prison, and misconduct by prison staff. "[C]onditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need . . . ." *Wilson*, 501 U.S. at 304; *accord Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004).

Walker argues that the district court erred with respect to whether he was subjected to conditions constituting an excessive risk of harm. Specifically, he contends that the court erred in assessing the amount of time his daily schedule allowed for sleep, because the court omitted the time he spent at the pill line and law library; the court erred in relying on the results of noise testing reflecting that the unit was in compliance with the noise standards of the American Correctional Association ("ACA"); the nearly one hundred unsworn declarations under 28 U.S.C. § 1746 that Walker provided from other inmates demonstrated that there was sleep deprivation resulting from staff misconduct, the defendants

4

were aware of the misconduct and refused to address it; and the court erred in determining that Walker's complaints and grievances were insufficient to place defendants on notice of a constitutional violation regarding inadequate sleep.

At the evidentiary hearing, Nunn testified that it was necessary for the unit to operate on a twenty-four-hour basis to perform the tasks required to keep the prison functioning. "[C]ourts will uphold a prison regulation claimed to infringe a prisoner's constitutional rights if it is 'reasonably related to legitimate penological interests.'" *Talib v. Gilley*, 138 F.3d 211, 214 (5th Cir. 1998) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Nunn further stated that the prison schedule was reviewed once or twice a year, at which time all aspects of the schedule were considered, and that the schedule was arranged to afford inmates adequate time for sleep within each daily period.

Additionally, though Walker complained of the opening and closing of cell doors every hour during the day, Nunn explained that the hourly ingresses and egresses enabled prisoners to enter and leave their cells as needed or desired while restricting intrusion into the cells by others. Nunn testified that intercom announcements throughout the day were necessary with the large number of inmates at the unit, because the intercom was the means for notifying various groups of inmates of events pertinent to their different schedules. Nunn's testimony also established that the head counts performed by the staff throughout the day did not require active participation from inmates and that the nightly bed-book count, which required inmates to show identification, was scheduled in conjunction with the unit's final rack-up to minimize the effect on sleep.

The structure of the prison schedule, hourly ingresses and egresses, intercom announcements, and daily counts were reasonably related to legitimate penological interests. *See id.* Nunn's testimony established the absence of a genuine issue of material fact regarding whether he and the other defendants took reasonable measures in balancing the daily activities necessary to the functioning of the prison and the time during which prisoners could choose to sleep. *See*

*Farmer*, 511 U.S. at 847. Walker presented no evidence refuting Nunn's testimony on that point and thus failed to satisfy his summary judgment burden regarding whether the defendants were deliberately indifferent to the risk of inadequate sleep resulting from the prison schedule. *See id.*; *Duffie*, 600 F.3d at 371.

Walker contends that the noise readings reflecting compliance with ACA standards were not an accurate measurement of the actual noise levels in the prison, because the readings were taken under controlled conditions. Although compliance with ACA standards "is not per se evidence of constitutionality," it may be a relevant consideration regarding whether there is an Eighth Amendment violation. *Gates*, 376 F.3d at 337. With respect to deliberate indifference, the relevant question is not whether the noise testing accurately measured the noise experienced by Walker but instead whether the defendants were aware of facts from which they could infer an excessive risk to Walker's health or safety and whether they actually drew such an inference. *See Farmer*, 511 U.S. at 837.

Nunn's unrefuted testimony established that there was not an overabundance of inmate grievances about noise, and it was not unreasonable for Nunn to respond to Walker's complaints about noise by ordering testing and then relying on the results indicating compliance with ACA standards. Furthermore, although Walker claimed that noise prevented him from being able to sleep during the times allowed by his schedule, he does not dispute that prison officials offered him medication to help him sleep and that ear plugs were available to prisoners from the commissary. Walker has not satisfied his summary judgment burden as to deliberate indifference regarding excessive noise. *See Farmer*, 511 U.S. at 847; *Duffie*, 600 F.3d at 371.

Walker alleged that guards screamed, improperly used the intercom, slammed cell doors, and beat on steel tables to wake and harass sleeping prisoners. Walker asserts that the defendants have ignored the complaints by him and numerous other inmates about sleep deprivation from staff misconduct and have

refused to adopt a policy addressing the issue of inadequate sleep.

The defendants may not be held vicariously liable for the misconduct of their subordinates. *See Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). To hold any of the defendants liable based on a supervisory role over the prison staff, Walker must show that (1) the defendant failed to supervise or to train the prison staff member; (2) a causal link exists between that failure and the violation of Walker's rights; and (3) that failure amounts to deliberate indifference. *See Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998). The defendants may escape failure-to-supervise liability by showing that they responded reasonably to Walker's complaints about staff misconduct. *See id.*

Though Walker alleged that staff misconduct continued despite his complaints to prison officials, including some of the defendants, he provided no evidence of (1) the defendants' actions, or lack thereof, in response to staff misconduct; (2) the existence of a causal link between the occurrences of staff misconduct involving Walker and the failure of the defendants to train or supervise staff members; and (3) how defendants' responses were unreasonable and amounted to deliberate indifference. *See id.* The responses to Walker's grievances in 2007, 2008, and 2009 about misconduct reflect that his complaints were investigated, and either no staff improprieties were found or corrective measures were taken. Walker has not satisfied his summary judgment burden as to an Eighth Amendment violation based on failure to supervise staff.

Supervisory liability may also exist without overt personal participation in the offensive act if the supervisory official "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304 (internal quotation marks and citation omitted). Walker alleged that defendants had a policy of depriving inmates of sleep and ignoring complaints of staff misconduct, but he presented no admissible evidence of such policies. His conclusional allegations and unsubstantiated assertions are not sufficient to withstand sum-

7

mary judgment. *See Duffie*, 600 F.3d at 371.

Walker claims the district court erred in denying his motions for additional discovery. Discovery matters are entrusted to the discretion of the district court. *Richardson v. Henry*, 902 F.2d 414, 417 (5th Cir. 1990). "[D]iscovery rulings will be reversed only where they are arbitrary or clearly unreasonable." *Mayo v. Tri-Bell Indus., Inc.*, 787 F.2d 1007, 1012 (5th Cir. 1986). The movant "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts" but instead must show why he needs additional discovery and how that discovery will create a genuine issue of material fact. *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001) (internal quotation marks and citation omitted).

The magistrate judge ("MJ") initially denied Walker's motions for additional discovery on the ground that he had not shown a particularized need for the discovery. Walker was subsequently asked by the MJ, at the beginning of the evidentiary hearing, to explain what further discovery he needed, regardless of whether it had been previously denied, to respond adequately to the motion for summary judgment. Walker indicated that he needed no further discovery. The court was entitled, as a matter of federal procedure, to rely on Walker's concessions in open court that he needed no additional discovery. *See Ergo Science, Inc. v. Martin*, 73 F.3d 595, 598-600 (5th Cir. 1996). In any event, notwithstanding Walker's reasons for abandoning further discovery, he has never satisfied his burden of showing why he needed the discovery and how it would have created a genuine issue of material fact. *See Beattie*, 254 F.3d at 606. His bare assertion that his requests were reasonable and set forth the reasons he needed the material is insufficient to meet his burden; his challenge to the denial of his motions for additional discovery is unavailing.

Walker contends that he objected to the MJ's order denying discovery but that the district court never ruled on his objection. To the extent that his objections were not withdrawn based on his statements at the evidentiary hearing,

the court implicitly overruled the objections by adopting the MJ's report and recommendation to grant summary judgment. *See Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 220 (5th Cir. 2000). Furthermore, the district court issued a postjudgment order denying Walker's motion for extended discovery, in which Walker challenged the MJ's denial of additional discovery. There is no merit to this contention.

Walker maintains that the district court erred in refusing to issue a subpoena for Wilma Valdez, a registered nurse who worked at the unit, to appear at the evidentiary hearing. Walker asserts that Valdez's testimony could have established that she placed prison officials on notice of his complaints about sleep. This court reviews for abuse of discretion the denial of a request to subpoena a witness. *Adkins v. Kaspar*, 393 F.3d 559, 571 (5th Cir. 2004). Before we will find abuse of discretion, "the proponent of the subpoena must show that relevant testimony was excluded, or that a substantial need for a witness's trial testimony existed." *Id.* Nunn's testimony established that Watson notified him of Walker's complaints. Thus, it would have been merely cumulative for Valdez to testify that she also passed along Walker's complaints. Walker has not shown that the court abused its discretion in denying a subpoena. *See id.*

Walker challenges the district court's determination that his amended complaint was not competent summary judgment evidence because it was not verified. He moves to supplement the record with the page of his amended complaint containing his verification, which page apparently was missing in the pleading considered by the district court. The allegations in a verified complaint may be considered competent summary judgment evidence. *See Hernandez*, 522 F.3d at 561. Regardless of whether Walker's amended complaint is considered verified, statements by others recounted in his amended complaint were not admissible to prove the truth of the matter asserted and could not be considered as evidence for that purpose on summary judgment. *See* FED. R. EVID. 801(c); *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 124-25 (5th Cir. 2011). Even

9

considering Walker's amended complaint as verified for purposes of his arguments on appeal, Walker has failed to satisfy his burden on summary judgment as to whether the defendants were deliberately indifferent to his complaints of inadequate sleep. Accordingly, this argument is unavailing.

In summary, the motion for leave to supplement the record is DENIED. The judgment is AFFIRMED.